UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV21-04665 JAK (JEMx) | Date | July 17, 2023 |
|---|---|---|---|
| Title | Starship, LLC v. Ghacham, Inc., et al. | | |

Present: The Honorable          JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE

| T. Jackson-Terrell | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| None | None |

**Proceedings:**          **(IN CHAMBERS) ORDER RE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DKT. 59)**

## I.    Introduction

On June 7, 2021, Starship, LLC (also "Starship," "Plaintiff," or "Rockstar Original") brought this action against Ghacham, Inc. (also "Ghacham"), GFTD, Ali Daoud Ghacham, and Mohamed Ghacham (collectively, the "Ghacham Parties" or "Defendants"). Dkt. 1 (the "Complaint"). The Complaint advances five causes of action: (1) copyright infringement under 17 U.S.C. § 101 *et seq.*; (2) contributory copyright infringement; (3) vicarious copyright infringement; (4) misappropriation of trade secrets under Cal. Civ. Code § 3426 *et seq.*; and (5) common-law unfair competition. *Id.* On August 10, 2021, Starship filed a First Amended Complaint, which added a sixth cause of action for breach of contract. Dkt. 23 (the "FAC").

On November 7, 2022, Defendants moved for summary judgment on each of Starship's claims. Dkt. 59 (the "Motion"). Starship opposed the Motion on December 1, 2022. Dkt. 68 (the "Opposition"). It filed certain evidentiary objections at the same time. Dkt. 69 ("Starship's Objections"). Defendants filed their reply on December 19, 2022. Dkt. 72 (the "Reply"). At that time, Defendants also filed certain evidentiary objections. Dkt. 73 (the "Defendants' Objections").

On December 19, 2022, Starship was given leave to add Daoud Ghacham as a defendant, to add certain allegations related to the Defendants' relationships with Fashion Nova, and to add additional copyrights. *See* Dkt. 74. A ruling on Starship's motion for leave to add a civil RICO claim was deferred. *Id.* The parties agreed that the Motion would address the issues raised in the SAC just as it did with respect to the FAC.

On December 29, 2022, the parties filed a joint supplement to the briefing on the Motion, which included enlarged copies of certain exhibits. Dkt. 75. On January 13, 2023, Plaintiff filed a sur-reply in opposition to the Motion. Dkt. 81 (the "Sur-Reply").

A hearing on these matters was held on January 23, 2023. For the reasons stated in this Order, the Motion is **GRANTED IN PART** and **DENIED IN PART**.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV21-04665 JAK (JEMx) | Date | July 17, 2023 |
|---|---|---|---|
| Title | Starship, LLC v. Ghacham, Inc., et al. | | |

## II.   Factual Background

A.     The Defendants' Business

Ghacham is in the fashion design, import and distribution business and has been since 1997. Dkt. 68-1 ("SGDF") ¶ 1. Ghacham's main line is "Platini," which seeks to offer well-tailored, fashionable men's clothing products with a Los Angeles flair. *Id.* ¶ 2. Ali Ghacham owns Ghacham, Inc., and his son, Daoud Ghacham, also has his own line of jeans, "GFTD," that operates within Ghacham. *Id.* ¶ 3. GFTD began operating either in late 2019 or early 2020. *Id.* The GFTD line operates in the urban denim market. *Id.* ¶ 4.

B.     Defendants Become Starship's Manufacturer

Starship was introduced to Ghacham at a business convention. SGDF ¶ 5. Beginning in February 2019, based on Ghacham's relationship with certain overseas third-party manufacturers, Plaintiff began submitting purchase orders to Ghacham, which Ghacham fulfilled. *Id.* ¶ 6. Ghacham was not directly manufacturing the products, but was instead relying on third parties to do so. *Id.* ¶ 7. Starship was aware of this arrangement. *Id.*

With respect to the Motion, Defendants concede that, as a precondition of accepting Starship's business, they entered an oral contract of confidentiality with Starship. SGDF ¶ 8. At his deposition, Mechaly testified that, when he had the corresponding conversations with Daoud Ghacham about confidentiality during the summer of 2019, they agreed that confidentiality contract would never terminate. Dkt. 59-6 at 131. In his declaration, Mechaly stated that he understood that Ghacham's confidentiality commitments under the oral agreement would also never terminate. Dkt. 68-6 ¶ 4. However, Mechaly also stated that this was not expressly stated in his discussion with Daoud Ghacham and neither side said anything about the duration of their commitments during that discussion. *Id.*

Starship cannot identify any writing referencing a confidentiality agreement between Starship and Defendants. SGDF ¶ 10. During counsel's review of the thousands of pages of electronic communications between the parties disclosed during discovery, there was no apparent reference to a confidentiality agreement between Starship and Defendants. *Id.* ¶ 12.

C.     Starship's Efforts to Protect Its Trade Secrets

Starship alleges that its trade secrets consisted of the following: (1) Starship's designs before they were released into the market; (2) Starship's design and sizing information as conveyed in "tech packs" and otherwise; and (3) Starship's ordering and reordering information. SGDF ¶ 15.

Starship does not have an employee handbook, or any written confidentiality agreements with its current employees. Its only efforts to enforce "confidentiality" as to its employees consisted of verbal reminders to them. SGDF ¶ 11. Starship says that it has taken other measures to ensure that others who have received Starship's confidential information keep that information confidential. *Id.* However, the only measure it cites is the aforementioned oral confidentiality agreement with Daoud Ghacham. Dkt. 68-6 ¶ 3.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV21-04665 JAK (JEMx) | Date | July 17, 2023 |
|---|---|---|---|
| Title | Starship, LLC v. Ghacham, Inc., et al. | | |

Starship did not mark its "tech packs" as confidential; the designations in Starship's document production are part of the Bates numbering at the bottom of the pages rather than the actual communications between the parties. SGDF ¶ 13.

Starship did not obtain contractual commitments of confidentiality as to its information from the third parties Ghacham was using to manufacture Starship products. SGDF ¶ 14. Starship contends that the oral confidentiality agreement required Ghacham to maintain the confidentiality of the sensitive information it would necessarily receive, and that this would necessarily preclude further dissemination to third parties. *See id.*; *see also* Dkt. 68-6 ¶ 3.

    D.    The Allegedly Infringing Products

In the FAC, Starship alleges that Defendants infringed its copyrights in the "Diamond" jean, the "Elon" jean, the "Stark" jean, the "Uriel" jacket, and the "Gambler" jean. SGDF ¶ 20. The "Diamond" jean was first published on November 15, 2020, and has a registration date of May 29, 2021. SGDF ¶ 21. The "Elon" jean was first published on September 25, 2020, and has a registration date of May 29, 2021. *Id.* ¶ 22. The "Stark" jean was first published on January 29, 2021, and has a registration date of May 29, 2021. *Id.* ¶ 23. The "Uriel" jacket was first published on November 19, 2020, and has a registration date of May 29, 2021. *Id.* ¶ 24. The "Gambler" jean was first published on December 1, 2019, and has a registration date of December 21, 2020. *Id.* ¶ 25. All of the statutory copyrights alleged in the FAC were registered more than three months after the date of first publication. *Id.* ¶ 26.

Starship also contends that Defendants infringed its copyrights in the "Dominic" jean, the "Ammo" jean, and the "Lando" hoodie. SGDF ¶ 48. The "Dominic" jean was first published on September 9, 2021, and has a registration date of May 4, 2022. *Id.* ¶ 49. The "Ammo" jean was first published on August 12, 2020, and has a registration date of May 4, 2022. *Id.* ¶ 50. The "Lando" hoodie was first published on April 1, 2021 and has a registration date of May 4, 2022. *Id.* ¶ 51. As a result, all of these copyrights were registered more than three months after the date of first publication.

Starship alleges that Defendants' "Savage" jean infringes the "Diamond" jean copyright. SGDF ¶ 37. Starship alleges that Defendants' "Matt" jean infringes the "Elon" jean copyright. *Id.* ¶ 38. Starship alleges that Defendants' "Stray" jean infringes the "Stark" jean copyright. *Id.* ¶ 39. Starship alleges that Defendants' "Crystal" jacket infringes the "Uriel" jacket copyright. *Id.* ¶ 40. Starship alleges that Defendants' "Sammy" jean infringes the "Gambler" jean copyright. *Id.* ¶ 41.

Defendants first sold the "Savage" jean on November 17, 2020. SGDF ¶ 42. Defendants first sold the "Matt" jean on February 4, 2021. *Id.* ¶ 43. Defendants first sold the "Stray" jean on December 15, 2020. *Id.* ¶ 44. Defendants first sold the "Crystal" jacket on December 14, 2020. *Id.* ¶ 45. Defendants first sold the "Sammy" jean on November 17, 2020. *Id.* ¶ 46. Defendants first sold all of the allegedly infringing items identified in the FAC prior to the registration of Starship's statutory copyrights. *Id.* ¶ 47.

    E.    The Instant Lawsuit

The relationship between Starship and Defendants broke down in Spring 2021. SGDF ¶ 17. Starship concedes that it has substantial, unpaid obligations to Ghacham with respect to merchandise that Ghacham provided. *Id.* ¶ 18. As noted, on June 7, 2021, Starship brought this action against

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV21-04665 JAK (JEMx) | Date | July 17, 2023 |
|---|---|---|---|
| Title | Starship, LLC v. Ghacham, Inc., et al. | | |

Defendants. *Id.* ¶ 19.

## III.   Evidentiary Objections

Starship objects to the admission of Deborah Young's expert report on hearsay grounds. Neither party cites case law that is on point. Starship relies on *Sisqueiros v. General Motors LLC*, Case No. 16-cv-07244-EMC, 2022 WL 3974752 (N.D. Cal. Aug. 31, 2022). That decision excluded an expert report on hearsay grounds. *Id.* at *12-13. However, it excluded the report for purposes of trial. Rule 56 applies a different standard.

Courts have reached different outcomes with regard to whether an unsworn expert report is admissible for purposes of summary judgment. Some courts hold that it is inappropriate to decline to consider "reports solely because they [a]re unsworn." *Patel v. Texas Tech Univ.*, 941 F.3d 743, 746 (5th Cir. 2019). "New Rule 56(c), added in 2010, permits a party to support or dispute summary judgment through unsworn declarations, provided their contents can be presented in admissible form at trial." *Id.* Other courts have held that expert reports may not be considered where they "are not signed under penalty of perjury," "no person certifies that the statements are true and correct," and "the reports are [not] accompanied by any separate sworn declaration" by the expert, and the report did not state "that the contents were made on personal knowledge, that the facts would be admissible in evidence, and that the affiants [we]re competent to testify to the information contained herein." *Duncan v. Becerra*, 366 F. Supp. 3d 1131, 1175 n.59 (S.D. Cal. 2019), *aff'd on other grounds*, 970 F.3d 1133 (9th Cir. 2020), *vacated on other grounds*, 19 F.4th 1087 (9th Cir. 2021), *vacated on other grounds*, 142 S. Ct. 2895 (2022), and *vacated and remanded on other grounds*, 49 F.4th 1228 (9th Cir. 2022) (quoting *Single Chip Systems Corp. v. Intermec IP Corp.*, Civil No. 04CV1517 JAH (CAB), 2006 WL 4660129 (S.D. Cal. Nov. 6, 2006)). These courts have concluded that Rule 56(c)(4) requires that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." *Id.*

Ultimately, Starship's objection is **MOOT**. Defendants argue that it can be determined that their designs are not substantially similar to Starship's based solely upon a visual comparison of the designs at issue. In addition, for the reasons stated below, the outcome on this issue would not be change even if Young's report were considered.

Defendants object that the fourth paragraph of Mechaly's declaration should not be considered under the "sham affidavit" rule. "The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony." *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991). However, this rule "does not automatically dispose of every case in which a contradictory affidavit is introduced to explain portions of earlier deposition testimony." *Id.* at 266–67. "[M]inor conflicts between [someone's] earlier deposition testimony and subsequent declaration" are not enough. *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 999 (9th Cir. 2009).

Defendants' objection is **OVERRULED IN PART** and **SUSTAINED IN PART**. At Mechaly's deposition, the following colloquy occurred:

Q. Did you enter a confidentiality agreement with any of the Defendants in this lawsuit?

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV21-04665 JAK (JEMx) | Date | July 17, 2023 |
|---|---|---|---|
| Title | Starship, LLC v. Ghacham, Inc., et al. | | |

> A. Yeah.
> Q. Were any of those agreements written down?
> A. No.
>
> . . . .
>
> Q. When you had these conversations with David about confidentiality in summer of 2019, how long was that confidentiality agreement for?
> A. Forever.

Dkt. 59-6 at 130-32.

The following further colloquy also occurred:

> Q. . . . So regarding your conversations about the confidentiality, my understanding – and please correct me if I'm wrong – is that the confidentiality was to last forever; is that correct?
> A. Yes.

Dkt. 72-2 at 13.

Mechaly's declaration includes the following statement:

> At my deposition in this case, I stated that Ghacham's confidentiality commitments under this oral agreement were to remain in effect "forever." This statement reflected my personal understanding, but it was not explicitly included in my discussion with Daoud Ghacham. In fact, neither side said anything about the duration of their commitments during that discussion. Had Ghacham's counsel inquired as to this point during my deposition, I would have told him as much.

Dkt. 68-6 ¶ 4.

Mechaly's statement that the duration of the agreement was not expressly discussed can be reconciled with his deposition testimony. Mechaly's deposition testimony did not state whether the duration of the confidentiality agreement was express or implied. Mechaly's declaration clarifies that he contends it was the latter. In Mechaly's declaration, he states that he personally understood that the confidentiality agreement was perpetual. Nor does he deny that the parties intended the confidentiality agreement to last forever. As to this statement, Mechaly's declaration explains his deposition testimony or, at most, presents a minor conflict with it.

Mechaly's declaration does not deny that the parties agreed that the confidentiality was to last forever, nor does it state that the confidentiality agreement was for a limited period. However, to the extent Mechaly's statement that his deposition testimony reflected his "personal understanding" is intended to contest either of those propositions, Mechaly's statement would be in clear and unambiguous contradiction with his deposition testimony. Nor could this conflict be fairly characterized as minor. To the extent that Mechaly's statement is offered for this purpose, it constitutes a "sham affidavit" and is

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV21-04665 JAK (JEMx) | Date | July 17, 2023 |
|---|---|---|---|
| Title | Starship, LLC v. Ghacham, Inc., et al. | | |

not admissible to create a dispute of material fact.

Defendants object to Mechaly's statement, quoted above, that if asked, he would have told Ghacham's counsel that the duration of the confidentiality agreement had not been expressly discussed. Defendants object that this statement is speculative. This objection is **OVERRULED**. Generally, it is not speculative for a witness to answer such a hypothetical question where the response is within the knowledge of the witness.

Defendants object to the declaration of Hil Davis on relevance grounds. Defendants contend that the declaration includes improper legal conclusions regarding the "reasonableness" of Starship's efforts to protect its trade secrets. This objection is **OVERRULED IN PART** and **MOOT IN PART**. Most of the declaration constitutes evidence of custom and practice in the apparel industry. Although not determinative of whether Starship acted reasonably, this evidence is relevant and admissible. The declaration also contains a statement that "[m]any apparel companies rely on this custom and practice, and in my view, it is reasonable for them to do so." Although the portion of this sentence beginning with the word "and" goes beyond evidence of custom and practice, it is not necessary to determine whether it is relevant. For the reasons stated below, the other statements made by Davis are sufficient to raise a triable issue of fact as to whether Starship's efforts were reasonable.

Defendants next object to the fifth and sixth paragraphs of the declaration of Robert Wunderlich on the grounds that it includes inappropriate expert testimony. Defendants argue that "[n]either Mr. Wunderlich's testimony nor his underlying report offer any coherent methodology or evidentiary support for the assertions therein, which consist largely of speculation." Dkt. 73 at 6. This objection is **MOOT**. For the reasons stated below in the corresponding discussion, even if admitted, this testimony would not raise a genuine issue of material fact.

## IV.    Analysis

### A.    Legal Standards

A motion for summary judgment will be granted where the "depositions, documents, electronically stored information, affidavits or declarations, stipulations[,] . . . admissions, interrogatory answers, or other materials" show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine dispute of material fact exists if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

At the summary judgment stage, the judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. *Id.* at 249. The party seeking summary judgment bears the initial burden to show the basis for its motion and to identify those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 322. Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. Where the nonmoving party will have the burden of proof on an issue, however, the movant need only demonstrate that there is an absence of evidence to support

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV21-04665 JAK (JEMx) | Date | July 17, 2023 |
|---|---|---|---|
| Title | Starship, LLC v. Ghacham, Inc., et al. | | |

the claims of the nonmoving party. *See id.* If the moving party meets its initial burden, the nonmoving party must set forth "specific facts demonstrating the existence of genuine issues for trial." *In re Oracle Corp. Secs. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex*, 477 U.S. at 324).

Only admissible evidence may be considered in connection with a motion for summary judgment. Fed. R. Civ. P. 56(c)(2). However, in considering such a motion, a court is not to make any credibility determinations or weigh conflicting evidence. All inferences are to be drawn in the light most favorable to the nonmoving party. *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630-31 (9th Cir. 1987). However, conclusory, speculative testimony in declarations or other evidentiary materials is insufficient to raise genuine issues of fact and defeat summary judgment. *See Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

B.   Application

1.   <u>The Copyright Claims</u>

a)   Whether the Parties' Designs Are "Substantially Similar"

"To establish a successful copyright infringement claim, a plaintiff must show that he or she owns the copyright and that defendant copied protected elements of the work." *Cavalier v. Random House, Inc.*, 297 F.3d 815, 822 (9th Cir. 2002). "Copying may be established by showing that the infringer had access to plaintiff's copyrighted work and that the works at issue are substantially similar in their protected elements." *Id.* It is undisputed for purposes of the Motion that Defendants had access to Starship's designs. However, Defendants claim there is no triable issue of fact as to substantial similarity.

In resolving questions of "substantial similarity," the Ninth Circuit applies a "two-part analysis" in which "an extrinsic test and an intrinsic test" are used. *Id.* "The 'extrinsic test' is an objective comparison of specific expressive elements." *Id.* The intrinsic test "is a subjective comparison that focuses on 'whether the ordinary, reasonable audience' would find the works substantially similar in the 'total concept and feel of the works.'"

"For summary judgment, only the extrinsic test is important." *Kouf v. Walt Disney Pictures & Television*, 16 F.3d 1042, 1045 (9th Cir. 1994). "A plaintiff avoids summary judgment by satisfying the extrinsic test which makes similarity of the works a triable issue of fact." *Id.* "In contrast, a plaintiff who cannot satisfy the extrinsic test necessarily loses on summary judgment, because a jury may not find substantial similarity without evidence on both the extrinsic and intrinsic tests." *Id.* Summary judgment "is not highly favored on the substantial similarity issue in copyright cases . . . ." *Funky Films*, 462 F.3d at 1076 (quoting *Berkic v. Crichton*, 761 F.2d 1289, 1292 (9th Cir. 1985)). However, substantial similarity "may often be decided as a matter of law" and the Ninth Circuit has "frequently affirmed summary judgment in favor of copyright defendants on the issue of substantial similarity." *Id.* at 1076-77 (quoting *Sid & Marty Krofft Television Prods., Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1164 (9th Cir. 1977); and quoting *Shaw v. Lindheim*, 919 F.2d 1353, 1355 (9th Cir. 1990)).

"[W]hen applying the extrinsic test, a court must filter out and disregard the non-protectible elements in making its substantial similarity determination." *Cavalier*, 297 F.3d at 822. Thus, the inquiry is "only

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV21-04665 JAK (JEMx) | Date | July 17, 2023 |
| Title | Starship, LLC v. Ghacham, Inc., et al. | | |

whether the *protectible elements, standing alone*, are substantially similar." *Id.* (cleaned up) (quoting *Williams v. Crichton*, 84 F.3d 581, 588 (2d Cir. 1996)).

When applied to designs on fabric, the extrinsic test examines "similarities in . . . 'objective details in appearance,' including, but not limited to, 'the subject matter, shapes, colors, materials, and arrangement of the representations." *L.A. Printex Indus., Inc. v. Aeropostale, Inc.*, 676 F.3d 841, 849 (9th Cir. 2012), *as amended on denial of reh'g and reh'g en banc* (June 13, 2012) (quoting *Cavalier*, 297 F.3d at 826). "Though mere variations of color are not copyrightable . . . similarities in color arrangements [can be] probative of copying." *Id.* at 851.

As a preliminary matter, Defendants argue that Starship "possesses a thin copyright that protects against only virtually identical copying." *See Satava v. Lowry*, 323 F.3d 805, 812 (9th Cir. 2003). In *Satava,* the plaintiff produced jellyfish sculptures and sought copyright protection for "[t]he selection of the clear glass, oblong shroud, bright colors, proportion, vertical orientation, and stereotyped jellyfish form . . . ." *Id.* at 811. It was determined that "to give [plaintiff] a copyright on this basic combination of elements would effectively give him a monopoly on the idea of glass-in-glass sculptures of single vertical jellyfish." *Id.* at 812. However, the plaintiff had "made some copyrightable contributions: the distinctive curls of particular tendrils; the arrangement of certain hues; the unique shape of jellyfishes' bells." *Id.* These original elements were protected but the plaintiff's copyright "compris[ed] no more than his original contribution to ideas already in the public domain." *Id.*

Not all copyrights are "thin." The Ninth Circuit noted in *L.A. Printex* that "'there are gazillions of ways' to combine petals, buds, stems, leaves, and colors in floral designs on fabric, in contrast to the limited number of ways to, for example, 'paint a red bouncy ball on black canvas' or make a lifelike glass-in-glass jellyfish sculpture." *L.A. Printex*, 676 F.3d at 850-51 (quoting *Mattel, Inc. v. MGA Entm't, Inc.*, 616 F.3d 904, 913-14 (9th Cir. 2010)). The Ninth Circuit held that, "[b]ecause there is 'a wide range of expression' for selecting, coordinating, and arranging floral elements in stylized fabric designs, 'copyright protection is 'broad' and a work will infringe if it's 'substantially similar' to the copyrighted work.'" *Id.* at 850 (quoting same).

In considering the issues in this action, it is appropriate to note that there are "gazillions" of ways to design jeans with flames, skulls, crosses, stripes, logos, and the other elements at issue. This is not a case where there is a narrow range of expression available. There are at least as many ways to place these elements on jeans as there are ways to place floral designs on fabric. As a result, Starship need not prove that Defendants' designs are "virtually identical" to its own.

Defendants also cite expert testimony to support the following: (1) the use of abstracted flames on jeans dates back decades; (2) numerous jean designers emblazon their brand names across the fly/crotch of jeans; (3) "Chrome Hearts" have been used on jeans since at least the 1980's; (4) red striping and distressing have been used on jeans since at least the 1970's; and (5) denim jackets with skulls and similar logos emblazoned on the backs have been in common use since the 1980's. SGDF ¶ 52. Even if this evidence is admissible, it is not material. This testimony merely suggests that Starship's designs are "similar to numerous" other designs. *Desire, LLC v. Manna Textiles, Inc.*, 986 F.3d 1253, 1261 (9th Cir.), *cert. denied*, 142 S. Ct. 343 (2021). However, "[t]hat [Starship's designs] may not be novel is immaterial to the question whether [they are] 'original.'" *Id.*; *see also Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345 (1991) ("Original, as the term is used in

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV21-04665 JAK (JEMx) | Date | July 17, 2023 |
|----------|--------------------------|------|---------------|
| Title | Starship, LLC v. Ghacham, Inc., et al. | | |

copyright, means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity.").

Defendants seek to distinguish *Desire*, arguing that Starship has admitted copying the works of others. The evidence does not support Defendants' argument in the context of the Motion. A Starship employee testified that "[w]e don't need to sketch or draw" because, "[w]hen it comes to inspiration . . . I'm looking at what the market is offering." Dkt. 72-2 at 10. Even if Starship drew inspiration from other designs, that does not necessarily mean that Starship copied those designs. Further, even if Starship copied certain designs, nothing in the record suggests that Starship copied the designs at issue here from anyone else.

In the following discussion, each of Starship's copyrighted designs is considered in the application of the "extrinsic test" of "substantial similarity."

An image of Starship's "Diamond" jean follows.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV21-04665 JAK (JEMx) | Date | July 17, 2023 |
|---|---|---|---|
| Title | Starship, LLC v. Ghacham, Inc., et al. | | |



Dkt. 59-6 at 180. An image of Defendants' "Savage" jean follows.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV21-04665 JAK (JEMx) | Date | July 17, 2023 |
| --- | --- | --- | --- |
| Title | Starship, LLC v. Ghacham, Inc., et al. | | |



*Id.* at 181.

A reasonable jury could find that these jeans are substantially similar. Both use black denim, a prominent brand name emblazoned on the crotch, and flames rising from the ankles. Further, the font and color of the logos are very similar, albeit not identical. Although Defendants' flames also have orange in them, the style of the edges of the flames is similar, and the flames reach a similar height in both designs. In both designs, a primary color of the flames matches the color of the logo. Although

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV21-04665 JAK (JEMx) | Date | July 17, 2023 |
|----------|--------------------------|------|---------------|
| Title | Starship, LLC v. Ghacham, Inc., et al. | | |

Starship's design has a faint smoke effect on the upper half of the design, this distinction does not alter the overall conclusion that a reasonable jury could find substantial similarity between these designs.

The next pair of garments is Starship's "Elon" jean and Defendants' "Matt" jean. An image of the Elon jean follows:



Dkt. 59-6 at 182. An image of the "Matt" jean follows:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV21-04665 JAK (JEMx) | Date | July 17, 2023 |
|---|---|---|---|
| Title | Starship, LLC v. Ghacham, Inc., et al. | | |



*Id.* at 183.

There is a triable issue as to the substantial similarity of these jeans. Both jeans have red, white and blue stripes of similar width in the same place on the side seams. Both pairs have similar distress patterns in the fabric, albeit in different locations on the garment. Defendants argue that distressing and stripes are ideas rather than copyrightable expressions of an idea. This argument is unpersuasive. Defendants used the same kind of stripes and distressing as Starship. Although there are differences between the designs, a jury could infer that Defendants copied Starship's design.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV21-04665 JAK (JEMx) | Date | July 17, 2023 |
|---|---|---|---|
| Title | Starship, LLC v. Ghacham, Inc., et al. | | |

Next are to Starship's "Stark" jean and Defendants' "Stray" jean. The following is an image of the "Stark" jean:



Dkt. 59-6 at 184.

The following is an image of the "Stray" jean:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV21-04665 JAK (JEMx) | Date | July 17, 2023 |
|---|---|---|---|
| Title | Starship, LLC v. Ghacham, Inc., et al. | | |



*Id.* at 185.

Defendants acknowledge that both designs have clusters of crosses, although Starship's crosses are all black while Defendants' crosses are black and light blue. Although Starship's product has 10 crosses and Defendants' has 14, this is not a material difference in view of the overall design. It is relevant that Starship's design has distressing primarily below the knee, while Defendants' design has distressing primarily above the knee. It is also relevant that Starship's design has a logo below the left pocket while Defendants' does not. This pair of designs presents a closer question than the previous

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV21-04665 JAK (JEMx) | Date | July 17, 2023 |
|---|---|---|---|
| Title | Starship, LLC v. Ghacham, Inc., et al. | | |

two. However, a reasonable jury could still find in Starship's favor. On summary judgment, the evidence must be viewed in the light most favorable to the non-moving party. Viewed in that light, a reasonable jury considering "the subject matter, shapes, colors, materials, and arrangement of the representations" could find infringement. *See L.A. Printex*, 676 F.3d at 849. The primary subject matter of the design is the crosses, which have a similar shape in both designs and often have the same color. The crosses are clustered in the same way in both designs. The distribution of crosses across the surface of the garment is also similar.

The next pair of designs is Starship's "Uriel" jacket and Defendants' "Crystal" jacket. The following is an image of the "Uriel" jacket:



UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV21-04665 JAK (JEMx) | Date | July 17, 2023 |
|---|---|---|---|
| Title | Starship, LLC v. Ghacham, Inc., et al. | | |

Dkt. 59-6 at 186.

The following is an image of the "Crystal" jacket:



*Id.* at 187.

Defendants argue that the designs are only similar because they are black jackets with skulls. However, the skulls are about the same size and have similar colors. It is relevant that Starship's

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV21-04665 JAK (JEMx) | Date | July 17, 2023 |
|---|---|---|---|
| Title | Starship, LLC v. Ghacham, Inc., et al. | | |

design is of a demon skull with horns, and Defendants' design features a human skull. Starship's design also contains the word Rockstar, whereas Defendants' design has other designs surrounding the skull but no words. This pair of designs presents another close issue. Starship is certainly not the first to put a skull on the back of a jacket. However, given that the designs use similar colors and place skulls of the same size in the same place, there has been an adequate showing that a jury could find in Starship's favor.

The next pair of products are Starship's "Gambler" jean and Defendants' "Sammy" jean. The following image is of the "Gambler" jean:



UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV21-04665 JAK (JEMx) | Date | July 17, 2023 |
|---|---|---|---|
| Title | Starship, LLC v. Ghacham, Inc., et al. | | |

Dkt. 59-6 at 188.

The following image is of the "Sammy" jean:



*Id.* at 189.

Defendants argue that the jeans have different colors, patterns and trimmings. They also argue that the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV21-04665 JAK (JEMx) | Date | July 17, 2023 |
|---|---|---|---|
| Title | Starship, LLC v. Ghacham, Inc., et al. | | |

general notion of distressed skinny jeans is the main point of commonality. However, based on a review of the images, the color of the denim, as well as the blue and white coloring on both legs, is largely identical. The blue and white patterns are approximately the same size and have a similar edge style in both designs. Distressed skinny jeans are common, and they have a wide variety of designs. Because of the similarities in the designs' color palettes, styles, and placement of graphical elements, there is a triable issue as to whether these designs are substantially similar.

The next issues are those presented in the SAC. The first pair of designs is Starship's "Dominic" jean and Defendants' "Curry" jean. An image of the "Dominic" jean is as follows:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV21-04665 JAK (JEMx) | Date | July 17, 2023 |
|----------|--------------------------|------|---------------|
| Title | Starship, LLC v. Ghacham, Inc., et al. | | |



Dkt. 72-2 at 1.

An image of the "Curry" jean is as follows:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV21-04665 JAK (JEMx) | Date | July 17, 2023 |
|---|---|---|---|
| Title | Starship, LLC v. Ghacham, Inc., et al. | | |



*Id.* at 2.

Again, a close question is presented. However, there is a triable issue as to substantial similarity. Both products have five-pointed stars in similar quantities. There are significantly more stars below the knee than above. They both contain a logo at a similar spot on the left thigh. Although the colors of the stars are different, and a five-pointed star is a generic design element, the subject matter, shapes, materials, and arrangement of the designs are nearly the same.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV21-04665 JAK (JEMx) | | Date | July 17, 2023 |
|---|---|---|---|---|
| Title | Starship, LLC v. Ghacham, Inc., et al. | | | |

A reasonable jury could find that the "Lando" and "Halo" hoodies are substantially similar. As before, an image of Starship's design is followed by an image of Defendants' design:



UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV21-04665 JAK (JEMx) | Date | July 17, 2023 |
|---|---|---|---|
| Title | Starship, LLC v. Ghacham, Inc., et al. | | |



Dkt. 75-1; Dkt. 72-2 at 5-6.

Both hoodies have snakes passing through skulls. In each case, the skull is a similar size and style. The snake passes through the skull in much the same way, although one passes through on the left and the other on the right. Again, the subject matter, shapes, materials, and arrangement of the skull-and-snake designs are nearly the same.

Again, this a close question. Defendants' hoodie is black, and Starship's hoodie is a color used for

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV21-04665 JAK (JEMx) | Date | July 17, 2023 |
|----------|--------------------------|------|---------------|
| Title | Starship, LLC v. Ghacham, Inc., et al. | | |

camouflage. The color palettes and textures of the skulls and snakes are completely different. Starship's hoodie has writing on the sleeve and a large amount of text behind the skull. Defendants' hoodie has a small amount of writing below the skull and a large line of text above the skull. The font and color do not match Starship's hoodie. These jackets are much less similar than, for example, the "Uriel" and "Crystal" jackets. Nevertheless, because the summary-judgment standard is not a difficult one for plaintiffs to satisfy, and there is an adequate showing of a triable issue as to substantial similarity.

There is no triable issue as to the remaining pair of garments. The following is an image of the "Ammo" jean:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV21-04665 JAK (JEMx) | | Date | July 17, 2023 |
|---|---|---|---|---|
| Title | Starship, LLC v. Ghacham, Inc., et al. | | | |



Dkt. 72-2 at 3.

The following is an image of Defendants' "Dusty" jean:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV21-04665 JAK (JEMx) | Date | July 17, 2023 |
|---|---|---|---|
| Title | Starship, LLC v. Ghacham, Inc., et al. | | |



*Id.* at 4.

No reasonable jury could find substantial similarity between these products. Most of the graphic elements on the jeans are not similar. Apart from the gun, the subject manner and arrangements of the designs are not similar. The jeans are also completely different colors. Although both jeans have an image of a downward-facing gun, the guns are different, and the guns are placed on different legs. Again, none of the writing or other images is similar. Therefore, summary judgment is appropriate as to this claimed infringement.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV21-04665 JAK (JEMx) | Date | July 17, 2023 |
|---|---|---|---|
| Title | Starship, LLC v. Ghacham, Inc., et al. | | |

*          *          *

For the foregoing reasons, the Motion is **DENIED** as to the copyright claims, except as to the "Ammo" jean, with respect to which the Motion is **GRANTED**.

> b)      Whether Plaintiff May Seek Attorney's Fees or Statutory Damages

Under 17 U.S.C. § 412, "no award of statutory damages or of attorney's fees . . . shall be made for – (1) any infringement of copyright in an unpublished work commenced before the effective date of its registration; or (2) any infringement of copyright commenced after first publication of the work and before the effective date of its registration, unless such registration is made within three months after the first publication of the work." "[I]nfringement 'commences' for the purposes of § 412 when the first act in a series of acts constituting continuing infringement occurs." *Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 700–01 (9th Cir. 2008) (quoting *Johnson v. Jones*, 149 F.3d 494, 506 (6th Cir. 1998)).

Defendants have presented evidence that all of the copyrights at issue were registered more than three months after the date of first publication and, in some cases, any alleged infringement commenced before the effective date of the registration. Starship has presented no contrary evidence, and Starship has not made any argument on this issue. Defendants have carried their burden. Starship is precluded from seeking attorney's fees or statutory damages under 17 U.S.C. § 412.

> c)      Whether Plaintiff May Recover Indirect Profits

The Copyright Act "is broad enough to permit recovery of indirect as well as direct profits." *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505, 517 (9th Cir. 1985). "At the same time, a court may deny recovery of a defendant's profits if they are only remotely or speculatively attributable to the infringement." *Id.* As a result, "a copyright holder must establish the existence of a causal link before indirect profits damages can be recovered." *Mackie v. Rieser*, 296 F.3d 909, 914 (9th Cir. 2002). "[A] district court must conduct a threshold inquiry into whether there is a legally sufficient causal link between the infringement and subsequent indirect profits. Such an approach dovetails with common sense-there must first be a demonstration that the infringing acts had an effect on profits before the parties can wrangle about apportionment." *Id.* at 915.

"[T]o survive summary judgment on a demand for indirect profits pursuant to § 504(b), a copyright holder must proffer sufficient non-speculative evidence to support a causal relationship between the infringement and the profits generated indirectly from such an infringement." *Id.* at 915–16. "The standard is straightforward: a copyright plaintiff is bound to no more and no less than its statutory obligation to demonstrate a causal nexus between the infringement and the profits sought." *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 712 (9th Cir. 2004), *as amended on denial of reh'g and reh'g en banc* (Oct. 25, 2004).

"Thus, § 504(b) creates a two-step framework for recovery of indirect profits: 1) the copyright claimant must first show a causal nexus between the infringement and the gross revenue; and 2) once the causal nexus is shown, the infringer bears the burden of apportioning the profits that were not the result of infringement." *Id.* at 711. Not every gross revenue number will meet this standard. "Thus, a copyright

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV21-04665 JAK (JEMx) | Date | July 17, 2023 |
| Title | Starship, LLC v. Ghacham, Inc., et al. | | |

owner is required to do more initially than toss up an undifferentiated gross revenue number; the revenue stream must bear a legally significant relationship to the infringement." *Id.*

The Ninth Circuit has applied this standard in three applicable cases. *First*, in *Frank Music*, the defendant included the plaintiff's copyrighted songs in a show at defendant's casino. *Frank Music*, 772 F.2d at 510. Although the defendants earned a direct profit from the show, "that fact [did] not detract from [its] promotional purpose[] . . . [which was] to draw people to the hotel and the gaming tables." *Id.* at 517. "Given the promotional nature" of the show, the Ninth Circuit held that "indirect profits from the hotel and gaming operations, as well as direct profits from the show itself, [we]re recoverable if ascertainable." *Id.* The Ninth Circuit remanded the case for further proceedings.

*Second*, in *Mackie*, a collage was included in direct-mail literature that encouraged recipients to subscribe to a concert series. *Mackie*, 296 F.3d at 916. The Ninth Circuit could "surmise virtually endless permutations to account for an individual's decision to subscribe to the Pops series, reasons that have nothing to do with the artwork in question." *Id.* The Ninth Circuit listed several factors that could have induced recipients to subscribe, including the Symphony's reputation, the program, and a love of music. "In the absence of concrete evidence, Mackie's theory [wa]s no less speculative than [the Ninth Circuit's] effort . . . to enumerate even a relatively short list of the myriad factors that could influence an individual's purchasing decisions." *Id.* It was determined that Mackie could not recover indirect profits.

*Third*, the plaintiff in *Polar Bear* proffered three indirect-profits theories, only two of which were viable. The plaintiff's first theory was that the copyrighted material had been used at trade shows, where the defendant's products were purchased. The plaintiff's expert "reviewed [the defendant's] sales records" to ascertain the gross revenue from those shows. *Polar Bear*, 384 F.3d at 712. The expert also used "his experience evaluating trade shows" to determine "that approximately 10% to 25% of trade show sales [we]re the result of excitement created by the booth promotion," of which the infringing material was a "substantial part." *Id.* This testimony "established the requisite causal connection between the category of profits sought – revenue from trade booth sales – and infringement." *Id.*

The second theory in *Polar Bear* was that the infringing material was included in an advertisement created by the defendant and Mountain Dew. The plaintiff offered evidence "that the Mountain Dew booklet contained an advertisement featuring the infringing material, that customers who ordered [defendant's product] through the Mountain Dew promotion would have seen the advertisement, and that [defendant] profited from the promotion." *Id.* The plaintiff then "present[ed] sales figures from [defendant's] press releases stating that the Mountain Dew promotion generated $564,000 in sales." This was deemed "[s]ufficient circumstantial evidence" to support plaintiff's second theory. *Id.*

In contrast, the third theory proffered in *Polar Bear* was not adequate and the jury's verdict was overturned as to this element of the claim. This theory claimed that all of the defendant's revenue from the relevant line of products derived, at least in part, from "the enhanced prestige" the defendant acquired by using plaintiff's copyrighted material in advertising. *Id.* at 713. "To recover indirect profits under its brand premium theory, Polar Bear shoulder[ed] the burden of demonstrating that the infringement is causally linked to the revenues from the sales of all Expedition watches." *Id.* These purchases were made by retail purchasers who "were never exposed to the infringing images from the trade shows," and there was no other evidence linking those consumers to the promotions containing

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV21-04665 JAK (JEMx) | Date | July 17, 2023 |
|---|---|---|---|
| Title | Starship, LLC v. Ghacham, Inc., et al. | | |

infringing material. *Id.* at 714. There were simply "too many question marks . . . between the promotional infringement, the purported enthusiasm generated among wholesalers and retailers by the advertising, the increased prices, and [defendant's] ultimate profits." *Id.*

Starship also relies on *Cisco Systems Inc. v. Arista Networks, Inc.*, No. 14-CV-05344-BLF, 2016 WL 11752975 (N.D. Cal. Nov. 16, 2016). The plaintiff in *Cisco* offered a market-share theory much like what Starship has presented here. Thus, the plaintiff's expert suggested "that substantially all of [defendant's] sales would be candidates for lost profits" because the infringing material "was necessary [for the defendant] to get its 'foot in the door' with a customer." *Id.* at *14.

*Cisco* is distinguishable. *First*, *Cisco* held that certain expert testimony was admissible; it did not hold that this testimony, standing on its own, would be sufficient to establish the required causal nexus. *Second*, the market-share theory in *Cisco* was adopted to prove direct profits, not indirect profits. Although a showing of causation is required for both kinds of profits, when a plaintiff seeks direct profits, "the bar it must meet is lower than that for indirect profits." *Id.* at *10. "This is because . . . indirect profits have a more attenuated nexus than direct profits." *Id.*; *see also Polar Bear*, 384 F.3d at 711 n.7 ("causation in indirect profit claims is often more attenuated than claims for actual damages or direct profits" and that, as a result, "[i]t is . . . particularly important for the plaintiff in [an] indirect profit action to demonstrate the alleged causal link between the infringement and profits sought").

Defendants argue that Starship cannot seek to recover all Defendants' profits from the GFTD line, only those that are alleged to be infringing. Starship argues that the revenue from all GFTD goods should be considered "in play" with respect to the calculation of Defendants' profits. For the reasons that follow, Starship has not made an adequate showing as to the requisite causal nexus.

Starship relies on a single piece of evidence to support its claims of causal nexus: the testimony of its expert, Wunderlich. Wunderlich testified that "Defendants' sales during the initial days of the GFTD line (from September 2020 through December 2020) totaled approximately $335,000." Dkt. 68-2 ¶ 4. Wunderlich also testified that "[t]otal sales of the GFTD line through June 22, 2022 equaled approximately $4.1 million." *Id.* Wunderlich stated that "[d]uring the initial period from September 2020 through December 2020, Defendants['] sales of the allegedly infringing products constituted a significant portion of total GFTD sales, approximately 20%." *Id.*

Wunderlich opines that the sales of the infringing products helped get GFTD's "foot in the door" and permitted them to misappropriate market share from Starship:

> Defendants would have established their relationships with their base of customers via their early designs and initial sales. Since Defendants' early designs include the allegedly infringing products and since the allegedly infringing products account for a significant portion of total GFTD sales at that time, it is reasonable to infer that the goodwill Defendants built via early sales of allegedly infringing goods aided their subsequent sales of different, non-infringing ones.
>
> Had Defendants not been able to establish themselves in the market in this manner, I would expect that at a minimum, the revenues they derived from overlapping products sold to overlapping customers would be split among the other market participants more

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV21-04665 JAK (JEMx) | Date | July 17, 2023 |
|---|---|---|---|
| Title | Starship, LLC v. Ghacham, Inc., et al. | | |

or less in proportion to their market share.

*Id.* ¶¶ 5-6.

Defendants object that Wunderlich's testimony is speculative and improper expert testimony. Even if this testimony were admitted, it does not create a triable issue of fact.

Wunderlich testified that Defendants' alleged infringement may have helped them derive revenues "from overlapping products sold to overlapping customers . . . ." *Id.* ¶ 5. But there is no evidence as to the gross revenue Defendants obtained from overlapping products sold to overlapping customers. Starship has only presented evidence of GFTD's overall gross revenue. This is insufficient. Again, "a copyright owner is required to do more initially than toss up an undifferentiated gross revenue number; the revenue stream must bear a legally significant relationship to the infringement." 384 F.3d at 711. To survive summary judgment, Starship does not necessarily have to prove the precise amount of the gross revenue. For example, if Defendants' records do not permit the number of overlapping customers buying overlapping products to be determined with certainty, a reasonable approximation may suffice. Starship has not provided such an approximation. Indeed, it has not cited to any testimony, documents, or other evidence suggesting that any overlapping products were sold to overlapping customers. Nor has Starship provided evidence of its market share, which is a necessary component of its expert's methodology. *See* Dkt. 68-2 ¶ 6.

Starship's theory is analogous to the third theory from *Polar Bear*. Starship argues that all sales of a line of products are "in play." Starship also argues that Defendants increased their sales because the infringing activity increased the goodwill associated with Defendants' brand. However, there is no evidence that consumers who bought the non-infringing goods had been previously exposed to the allegedly infringing goods, just as there was no evidence in *Polar Bear* that the retail customers had been exposed to the allegedly infringing promotions. The allegedly infringing products only constituted 20% of GFTD's sales during the start-up period identified by Wunderlich. As in *Polar Bear*, it would be speculation to assume that some of those who purchased the allegedly infringing products later purchased non-infringing products.

Conversely, *Frank Music* and the first two theories from *Polar Bear* are distinguishable. In each of those cases, the plaintiff was able to prove up the defendant's gross revenue from the legally relevant revenue stream. Starship has made no such showing. In addition, the infringing material in *Frank Music* was closely linked to a promotional purpose. The defendant in *Frank Music* sought to encourage people to attend its show so they would also spend money at its hotel and casino. Here, there is no such evidence. It appears that the primary purpose for selling the non-infringing products was just that. Also, in *Polar Bear*, the indirect profits claimed by the plaintiff were limited to purchases made as a result of the infringing advertisements. Starship provided no evidence linking the indirect profit figures offered by Wunderlich to those who purchased, or even saw, the allegedly infringing goods.

For the foregoing reasons, Starship is precluded from seeking to recover indirect profits from Defendants.

        2.     <u>The Breach-of-Contract Claim</u>

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV21-04665 JAK (JEMx) | Date | July 17, 2023 |
|----------|--------------------------|------|---------------|
| Title | Starship, LLC v. Ghacham, Inc., et al. | | |

Defendants contend that the breach-of-contract claim is barred by the statute of frauds. "The following contracts are invalid, unless they, or some note in memorandum thereof, are in writing and subscribed by the party to be charged or by the party's agent: . . . An agreement that by its terms is not to be performed within a year from the making thereof." Cal. Civ. Code § 1624(a)(1). "[B]oth the express and implied terms of a contract are equally terms of the agreement within the meaning of that phrase as used in the statute." *San Francisco Brewing Corp. v. Bowman*, 52 Cal. 2d 607, 619, 343 P.2d 1, 7 (1959). "The statute of frauds 'demands that every material term of an agreement within its provisions be reduced to written form, whether the parties desire to do so or not.'" *Casa Herrera, Inc. v. Beydoun*, 32 Cal. 4th 336, 345 (2004). "The contract is unenforceable only where *by its terms* it is *impossible* of performance in the period." *Mytee Prod., Inc. v. H.D. Prod., Inc.*, No. 05CV2286 R (CAB), 2007 WL 1813765, at *5 (S.D. Cal. June 22, 2007). "If it is merely unlikely that it will be so performed, or the period of performance is *indefinite,* the statute does not apply." *Id.*

Here, the parties only identified one source of testimony regarding the meaning of the alleged oral confidentiality agreement: the deposition and declaration of Mechaly. No other witness claimed knowledge of the terms of the agreement. And no party has sought to present other evidence bearing upon contract interpretation. Whether those terms are express and oral or implied and oral, they can only be determined by reference to Mechaly's testimony.

For context, the aforementioned testimony is restated here. At Mechaly's deposition, the following colloquy occurred:

> Q. Did you enter a confidentiality agreement with any of the Defendants in this lawsuit?
> A. Yeah.
> Q. Were any of those agreements written down?
> A. No.
>
> . . . .
>
> Q. When you had these conversations with David about confidentiality in summer of 2019, how long was that confidentiality agreement for?
> A. Forever.

Dkt. 59-6 at 130-31.

The following further colloquy also occurred:

> Q. . . . So regarding your conversations about the confidentiality, my understanding – and please correct me if I'm wrong – is that the confidentiality was to last forever; is that correct?
> A. Yes.

Dkt. 72-2 at 13.

Mechaly's declaration included the following statement:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV21-04665 JAK (JEMx) | Date | July 17, 2023 |
|---|---|---|---|
| Title | Starship, LLC v. Ghacham, Inc., et al. | | |

At my deposition in this case, I stated that Ghacham's confidentiality commitments under this oral agreement were to remain in effect "forever." This statement reflected my personal understanding, but it was not explicitly included in my discussion with Daoud Ghacham. In fact, neither side said anything about the duration of their commitments during that discussion. Had Ghacham's counsel inquired as to this point during my deposition, I would have told him as much.

Dkt. 68-6 ¶ 4.

Although Mechaly stated that the duration of the agreement was not expressly discussed, his declaration did not contradict his deposition testimony that the parties reached a confidentiality agreement that was to last forever. Agreements may be express, or they may be implied by the other statements of the parties, by custom, and by other means. Under *Bowman*, the implied terms of an agreement are still "terms of the agreement" for purposes of determining whether the contract falls within the statute of frauds.

Starship argues that a jury could find that Ghacham, Inc. would have been within its right to decide a week after entering the contract that it would rather lose Starship's business than be bound by the confidentiality agreement and then it would have been free to use Starship's trade secrets after six months. There is no evidence in the record suggesting that the parties had such an agreement. No witness has testified that those were the terms of the contract, and a jury would have no basis for deciding that the parties had made that agreement.

*Connelly v. Venus Foods, Inc.*, 174 Cal. App. 2d 582 (1959) is not to the contrary. There, a witness testified at deposition that "nothing was said" about the duration of the distributorship and she "just assumed that it was a permanent distributorship." *Id.* at 585. At trial, she testified that she and her husband said they "wouldn't enter into any agreement whatsoever unless we knew that we could have the item more or less permanently and also on an exclusive basis" and later said they "wanted [the distributorship] on a permanent basis or wouldn't consider it." *Id.* It was determined that the evidence could support "a contract for a reasonable period terminable upon reasonable notice," a contract "for performance over a period exceeding one year," or a contract "for an indefinite period . . . [that] under the circumstances exceeded one year." *Id.* at 586.

*Connelly* is distinguishable. *First*, the trial testimony in *Connelly* was that the witness' belief about the agreement's duration was "just" her assumption. Here, although Mechaly's declaration stated that his deposition testimony reflected his personal assumption, he never stated that a perpetual duration was not part of the parties' agreement. *Second*, the deposition testimony in *Connelly* was that the witness repeatedly proposed a permanent distributorship; here, Mechaly testified that Defendants' confidentiality agreement actually was permanent. The deposition testimony in *Connelly* is also different because that testimony was unclear whether the agreement was to be permanent or just "more or less" permanent. *Third*, this case involves a conflict between a summary-judgment declaration and deposition testimony, not between trial testimony and deposition testimony. The "sham affidavit" rule did not apply in *Connelly*.

As a result, the contract falls within the statute of frauds. If the oral agreement was made, Defendants' confidentiality obligations lasted forever. Disclosure would never be permitted, no matter what

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV21-04665 JAK (JEMx) | Date | July 17, 2023 |
|----------|--------------------------|------|---------------|
| Title | Starship, LLC v. Ghacham, Inc., et al. | | |

contingencies would later occur. Defendants could not have fully performed this obligation within a one-year period. This is not a contract with a fixed duration of one year or less, nor is it a contract of indefinite duration where the time of performance depends on one contingency or another.

Starship analogizes this case to *Hollywood Motion Picture Equipment Co. v. Furer*, 16 Cal. 2d 184 (1940). There, the plaintiff invented a new microphone and certain other devices. *Id.* at 185. Specifically, the plaintiff created wooden patterns of these inventions that would be used to create finished castings of the plaintiff's inventions. *Id.* The plaintiff engaged the defendant to manufacture the castings from the patterns. *Id.* It was orally agreed that defendants "would only make [from the patterns] such castings as were ordered by plaintiff, and that *they would not make any castings therefrom* other than those ordered by the plaintiff . . . ." *Id.* The defendant breached this term of the oral agreement and made castings for others. *Id.* The plaintiff sued, and the defendant raised the statute of frauds as a bar. *Id.* "When plaintiff left its patterns with defendant for him to manufacture the devices not a word in their oral agreement indicated an intention that defendant was to make castings always or over any definite period of time." *Id.* at 186. "By no term or construction of the contract was plaintiff obligated to order castings made or to leave the patterns with defendant after the expiration of a year." *Id.* at 186–87. "To say that because plaintiff did not specify any time during which defendant should 'not make any castings' means that he should never do so, is to read into the agreement something which is not there." *Id.* at 187. For this reason, it was determined that the statute of frauds did not apply.

*Hollywood* is also factually distinguishable. In *Hollywood*, the agreement could have been performed in one year because the plaintiff could have retrieved the patterns from the defendant, eliminating the possibility that the defendant would use those casings. Here, Starship provided Defendants with their trade secrets, including information about the designs Starship was creating and Starship's ordering and reordering information. Non-physical trade secrets are not the same as physical machine parts. A person with knowledge of trade secrets can maintain that knowledge, and potentially use it even after the parties' manufacturing relationship ends. Here, Defendants would still have information about Starship after the parties stopped working together. Thus, if the oral agreement were proven, Defendants would still have an obligation to keep the alleged trade secrets confidential in perpetuity. Their performance of this obligation could not be completed within a year.

That the alleged oral agreement is not enforceable, does not *per se* bar Plaintiff's breach-of-contract claim. It was alleged in the Second Amended Complaint that the agreement between Starship and Defendants was "partly oral and partly implied." SAC ¶ 59. Further, it was alleged that "[t]he implied terms mirrored those of the oral contract and were based on custom and practice in the fashion industry, governing the conduct of third-party manufacturers." *Id.* In connection with the Motion, Plaintiff argued that "there is a commonly understood custom and practice in the apparel industry that manufacturers cannot use information entrusted to them by one designer in service to another (including itself), and that this custom and practice applies whether there is a formal confidentiality agreement in place or not." Opposition at 21. Plaintiff also supported this theory with evidence. Hil Davis submitted a declaration stating that "[a]s a matter of custom and practice in the industry . . . contract manufacturers maintain the confidentiality of this information and do not use it for their own, independent advantage or that of competing apparel companies." Dkt. 68-4 at 3. Davis further stated that "[m]any apparel companies rely on this custom and practice . . . ." *Id.* Davis testified that "[t]he industry practices described above apply regardless of whether [confidentiality or trade-secret] agreements are used." *Id.* These statements were based on personal knowledge: Davis testified that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV21-04665 JAK (JEMx) | Date | July 17, 2023 |
|---|---|---|---|
| Title | Starship, LLC v. Ghacham, Inc., et al. | | |

she was "aware of these facts from having run and managed apparel companies and from having observed and participated in the development process [her]self." *Id.*

"As to the basic elements [of a contract cause of action, there is no difference between an express and implied contract." *Division of Labor Law Enforcement v. Transpacific Transportation Co.*, 69 Cal. App. 3d 268, 275 (1977). In addition, "an implied in fact contract may be inferred from the conduct, situation or mutual relation of the parties . . . ." *Id.*; *see also Marvin v. Marvin*, 18 Cal. 3d 660, 678 n.16 (1976) (holding that an implied contract can be "shown by the acts and conduct of the parties, interpreted in the light of the subject-matter and of the surrounding circumstances").

Here, a reasonable jury could infer the existence of an implied-in-fact contract between the parties that obligated Defendants not to use or disclose Plaintiff's trade secrets for purposes other than providing services to Plaintiff. It is undisputed that Plaintiff repeatedly placed orders with Ghacham, Inc. and that the parties had an ongoing relationship. Hil Davis' testimony supports the position that industry custom and practice obligated Defendants to maintain the confidentiality of Plaintiffs' trade secrets under these circumstances. Both Plaintiff and Ghacham, Inc. are sophisticated participants in the apparel field, and may be presumed to be aware of relevant industry customs.

It is also relevant that Defendants knew Plaintiff designed goods, and was therefore primarily in the business of exploiting its intellectual property. A jury could find that Plaintiff would have no reason to enter an agreement with a manufacturer unless its intellectual property was protected in some manner. Therefore, a triable issue is presented as to whether Plaintiff's failure to secure express, enforceable protection for its intellectual property shows that Plaintiff's intellectual property did not have any enforceable protection. It is also relevant that Defendants have provided no evidence of deviations from, or substantial variation within, this alleged custom.

Unlike the alleged oral agreement, there is no evidence that the alleged implied contract is barred by the statute of frauds. Indeed, there is no evidence as to the duration of the custom at issue. For this reason, Defendants contend that this agreement is unenforceable because there could not have been a meeting of the minds. However, California law permits courts to infer a duration term even where no such term is specified in the parties' contract. *San Francisco Brewing Corp. v. Bowman*, 52 Cal. 2d 607, 619 (1959) (a jury could determine that "the contract did carry within it an implied agreement that it should endure for a reasonable time"); *Consol. Theatres, Inc. v. Theatrical Stage Emp. Union, Loc. 16*, 69 Cal. 2d 713, 724 (1968) ("[T]he omission of provision for duration did not render the agreement fatally uncertain and indefinite[.]").

When the duration of an agreement cannot be determined from its terms and the surrounding context, "the law usually implies that the term of duration shall be at least a reasonable time, and that the obligations under the contract shall be terminable at will by any party upon reasonable notice after such a reasonable time has elapsed." *Consol. Theatres*, 69 Cal. 2d at 727–28 (footnote omitted). It appears that this agreement could have been performed within one year. Because there is no evidence as to the duration of the implied agreement at issue, under California law it may be assumed that this alleged agreement has a reasonable duration. This is an agreement to keep trade secrets confidential, so the reasonable duration of that alleged agreement cannot extend beyond the life of the trade secrets. A trade secret can be publicly disclosed at any time, after which it is no longer a trade secret. If Starship were to disclose its trade secrets within a year of the agreement, the agreement could be terminated at

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV21-04665 JAK (JEMx) | Date | July 17, 2023 |
|---|---|---|---|
| Title | Starship, LLC v. Ghacham, Inc., et al. | | |

that time. As a result, the alleged implied contract is not unenforceable, either on indefiniteness or statute-of-frauds grounds.

Nor is the alleged implied contract unenforceable because it was superseded by the unenforceable alleged oral contract. "A subsequent agreement, if void by the statute of frauds, [can] not alter, revoke, or modify the previous valid contract." *Harvey v. Morey*, 22 Colo. 412, 414 (1896); *see Bakke v. Buck*, 21 Wash. App. 762, 764 (1978) ("A void contract cannot legally modify or extinguish an earlier valid contract, thus the original agreement remains in effect and can be sued upon."); *Carter v. Rich's, Inc.*, 83 Ga. App. 188, 192 (1951) ("To discharge an existing contract, the subsequent, inconsistent agreement covering the same subject matter must be a *valid* contract, and not a nudum pactum."); *cf. Airs Int'l, Inc. v. Perfect Scents Distributions, Ltd.*, 902 F. Supp. 1141, 1148–49 (N.D. Cal. 1995) ("If the new contract is invalid, there is no novation and the parties' previous obligations are not extinguished.").

For the foregoing reasons, the Motion is **DENIED** as to this claim.

### 3.     The Trade-Secret Claims

To be a trade secret, information must be "the subject of efforts that are reasonable under the circumstances to maintain its secrecy." Cal. Civ. Code § 3426.1(d)(2). "[A]mong the factors repeatedly noted are restricting access and physical segregation of the information, confidentiality agreements with employees, and marking documents with warnings or reminders of confidentiality." *In re Providian Credit Card Cases*, 96 Cal. App. 4th 292, 304 (2002). "If an individual discloses his trade secret to others who are under no obligation to protect the confidentiality of the information, or otherwise publicly discloses the secret, his property right is extinguished." *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1002 (1984); *accord Providian*, 96 Cal. App. 4th at 304. Even a single disclosure can destroy a trade secret. "If an inventor gives or sells to another a device embodying the inventor's invention, without limitation or injunction of secrecy as to its use, and the device is so used, such use is public even though the use is confined to one person." *HiRel Connectors, Inc. v. United States*, No. CV01-11069 DSF VBKX, 2006 WL 3618011, at *7 (C.D. Cal. Jan. 25, 2006) (quoting *Nat'l Welding Equip. Co. v. Hammon Precision Equip. Co.*, 165 F. Supp. 788, 792 (N.D. Cal. 1958), *disapproved on other grounds by Diamond Sci. Co. v. Ambico Co.*, 848 F.2d 1220 (Fed. Cir. 1988)).

"Whether a company has taken reasonable efforts to protect its trade secrets is a 'quintessentially fact-specific' inquiry." *Palantir Techs. Inc. v. Abramowitz*, No. 19-CV-06879-BLF, 2022 WL 2952578, at *4 (N.D. Cal. July 26, 2022) (quoting *SPS Techs., LLC v. Briles Aerospace, Inc.*, Case No. CV 18-9536-MWF (ASx), 2021 WL 5785264, at *8 (C.D. Cal. Sept. 3, 2021)). "Because the costs and benefits of precautions in a particular commercial context are issues of fact, 'only in an extreme case can what is a 'reasonable' precaution be determined on a motion for summary judgment . . . .'" *AT&T Commc'ns of California, Inc. v. Pac. Bell*, 238 F.3d 427 (9th Cir. 2000) (unpublished) (quoting *Rockwell Graphic Sys., Inc.*, 925 F.2d 174, 179 (7th Cir. 1991)). "However, courts routinely summarily adjudicate cases in which the plaintiff did not take steps to ensure the confidentiality of its material." *Gemisys Corp. v. Phoenix Am., Inc.*, 186 F.R.D. 551, 558 (N.D. Cal. 1999).

Some courts have granted summary judgment on trade secret claims based on "information given" to the defendant "that was not subject to a confidentiality agreement . . . ." *HiRel*, 2006 WL 3618011, at *8. However, "[p]roviding alleged trade secrets to third parties does not undermine a trade-secret claim, so

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV21-04665 JAK (JEMx) | Date | July 17, 2023 |
|---|---|---|---|
| Title | Starship, LLC v. Ghacham, Inc., et al. | | |

long as the information was 'provided on an understanding of confidentiality.'" *VBS Distribution, Inc. v. Nutrivita Lab'ys, Inc.*, 811 F. App'x 1005, 1009 (9th Cir. 2020), *cert. denied*, 141 S. Ct. 454 (2020) (quoting *United States v. Nosal*, 844 F.3d 1024, 1043 (9th Cir. 2016). In *VBS*, the CEO of the plaintiff orally reviewed plaintiff's policy and guidelines with all of its vendors, including the "obligation" to maintain the confidentiality of this information. *Id.* Although there was no written confidentiality agreement, summary judgment on the issue of reasonable protective measures was denied. *Id.* Defendants distinguish this case on the grounds that the plaintiff also required its employees to sign confidentiality agreements and password-protected its computers. *Id.* However, neither of these measures would have affected the risk of disclosure by the vendors. Therefore, neither affected the decision by the Ninth Circuit that the disclosure to the vendors did not undermine the plaintiff's trade secret claim.

Further, "courts will consider the factual circumstances of each case on an individual basis, to determine whether a confidential relationship may reasonably be implied." *Pachmayr Gun Works, Inc. v. Olin Mathieson Chem. Corp., Winchester W. Div.*, 502 F.2d 802, 808 (9th Cir. 1974). It is not required "that a specific and judicially-recognized relationship had to have been established before plaintiffs were entitled to rely on [others] to maintain the secrecy" of the alleged trade secrets. *Id.* at 807-08. The Ninth Circuit later declined to rule on the continuing validity of *Pachmayr* in light of California's revised trade-secret statute. *Direct Techs., LLC v. Elec. Arts, Inc.*, 836 F.3d 1059, 1070-71 (9th Cir. 2016). Nevertheless, it recognized that "[i]t may be that in some factual circumstances, a rational jury could find that when an implied relationship of confidentiality exists between two business partners, it is 'reasonable under the circumstances' for the prospective seller not to make additional efforts to maintain secrecy" of the alleged trade secrets. *Id.*

Defendants argue that a signed confidentiality agreement is required. They rely on *VSL Corp. v. General Technologies Inc.*, No. C 96-20446 RMW(PVT), 1997 WL 654103, at *3 (N.D. Cal. July 21, 1997). This reliance is misplaced. In that case, the plaintiff "never required that anyone sign a confidentiality agreement before being given samples and other data." *Id.* However, the plaintiff also published reports about their invention, displayed it trade shows, and distributed marketing information with detailed drawings and measurements. *Id.*

Defendants also argue that those who hold trade secrets must provide regular and frequent reminders to their employees and vendors not to disclose their trade secrets. Their reliance on *Alamar Biosciences, Inc. v. Difco Laboratories, Inc.*, No. CIV-S-941856 DFL PAN, 1995 WL 912345, at *6 (E.D. Cal. Oct. 13, 1995) is not persuasive. There, the plaintiff "strongly suspected" certain groups of misappropriating its trade secrets but it neither sued nor warned those groups that it would enforce its rights to its trade secrets. *Id.* The decision also noted that trade secret holders must "exercise eternal vigilance," provide "constant warnings to all persons to whom the trade secret has become known," and "obtain[] from each [recipient] an[] agreement, preferably in writing, acknowledging its secrecy and promising to respect it." *Alamar* is distinguishable. *First*, Starship sued Defendants rather than sleeping on its rights. There is no evidence suggesting that it ignored "strong suspicions" or "strong circumstantial evidence." *See id. Second*, the statement in *Alamar* regarding "constant" warnings does not suggest that, for example, the warnings must be daily or weekly. Reasonable protective measures under all of the circumstances is what is required. Starship's testimony that periodic reminders were provided to its employees is sufficient to distinguish *Alamar*. *Third*, *Alamar* indicated that confidentiality agreements are "preferably" in writing. It did not hold that oral confidentiality agreements are

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV21-04665 JAK (JEMx) | Date | July 17, 2023 |
|---|---|---|---|
| Title | Starship, LLC v. Ghacham, Inc., et al. | | |

necessarily insufficient. These grounds reflect a triable issue.

The parties have cited no cases holding that summary judgment is proper solely because a plaintiff fails to apply confidentiality designations to the trade secrets. *Cf. Fail-Safe LLC v. A.O. Smith Corp.*, 744 F. Supp. 2d 831, 857 (E.D. Wis. 2010) (summary judgment granted where plaintiff never applied "any symbol that the information contained therein was confidential," never "told [the recipient] that [it] considered the information in question confidential," and "never obtained a confidentiality agreement"). Instead, as *Providian* recognized, the presence or absence of confidentiality designations is merely an important factor.

Starship has raised a triable issue as to whether it took reasonable protective measures with respect to disclosures by its employees. Oral reminders, if sufficiently frequent, may suffice. Neither party has offered detailed evidence as to the frequency of these oral reminders, but the jury could conclude from Starship's 30(b)(6) testimony that it was "always reminding" its employees "to not share . . . trade secret information with anyone" that it took reasonable protective measures. Dkt. 59-6 at 134.

Starship has also raised a triable issue as to the possibility of disclosure by Defendants. A disclosure to those "who are under no obligation to protect the confidentiality of the information" may destroy trade secret protection. *See Ruckelshaus*, 467 U.S. at 1002; *Providian*, 96 Cal. App. 4th at 304. However, *VBS* and *Pachmayr* suggest that an oral confidentiality obligation, or even an implied confidentiality obligation, may be sufficient to present a triable issue. Although the oral confidentiality agreement was unenforceable, there is a triable issue of fact as to the reasonableness of Defendants' protective measures. *First*, for the reasons discussed in connection with the breach-of-contract claim, there is a genuine dispute as to whether Plaintiff's trade secrets were protected by an implied, yet enforceable, contract. *Second*, there is a genuine dispute as to whether Plaintiff believed it had an express confidentiality agreement from Defendants. If elements of Mechaly's testimony are credited, it could be determined that Defendants made an oral promise to hold Plaintiff's trade secrets confidential in perpetuity. Although this agreement is not enforceable, Plaintiff's efforts to obtain an express confidentiality agreement, and its belief that it had obtained one, could be relevant to the reasonableness of its efforts to protect its alleged trade secrets.

For the foregoing reasons, the Motion is **DENIED** as to the trade-secret claim.

4.   The Unfair-Competition Claim

Defendants argue that the unfair competition claim alleges that Defendants made unauthorized use of Starship's proprietary information. Defendants argue that this part of the claim fails for the same reasons as the trade secret claim. Defendants also argue that the unfair competition claim alleges that Defendants have caused "consumer confusion." Defendants contend there is no evidence of consumer confusion. Also, given that the brands have different names, Defendants contend that the claim is implausible. Starship states that it will not present a "passing off" or consumer confusion theory at trial. Starship concedes that the former theory is a "trade secret" theory and should remain in the case for the same reasons as the trade-secret claim.

Because both parties agree that Starship's "trade secret" theory rises or falls with its trade-secret claim, the Motion is **DENIED** as to the unfair-competition claim. However, this Order does not address any

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV21-04665 JAK (JEMx) | Date | July 17, 2023 |
|---|---|---|---|
| Title | Starship, LLC v. Ghacham, Inc., et al. | | |

other legal doctrines that could bar this claim, only those raised in the Motion.

Because Defendants have pointed to a lack of evidence in support of Starship's "passing off" theory, and Starship has conceded that the theory should not be presented to the jury, the Motion is **GRANTED** as to the "passing off" theory.

V.      Conclusion

For the reasons stated in this Order, the Motion is **GRANTED IN PART** and **DENIED IN PART**. Starship may proceed with its copyright claims, except as to the "Ammo" jean. However, Starship may not recover attorney's fees, statutory damages, or indirect profits. Starship may proceed with its breach-of-contract and trade secret claims. Starship may also proceed with its unfair-competition claim, but may not present its "passing off" theory to the jury.

Within 14 days of the issuance of this Order, the parties shall file a joint report as to the procedural status of their settlement discussions. In that report, the parties shall also state their collective and/or respective positions as to whether any further settlement proceedings should be scheduled in this action and whether a Trial Setting Conference should be scheduled, and if so a proposed date for that proceeding.

**IT IS SO ORDERED.**

|  | : |
|---|---|
| Initials of Preparer | tj |